UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


JOHN WALTER RINKER                          CIVIL ACTION

VERSUS                                      NO. 10-372

ERIC HARRISON ET AL.                        SECTION "S" (2)


## REPORT AND RECOMMENDATION

Plaintiff, John Walter Rinker, was a prisoner incarcerated in the Orleans Parish
Prison system ("OPP") at the time this case was filed. He filed this complaint pro se and
in forma pauperis pursuant to 42 U.S.C. § 1983 against Orleans Parish Criminal Sheriff
Marlin N. Gusman, Deputy Eric Harrison, the New Orleans Sheriff's Department, the
Orleans Parish Prison and the New Orleans City Attorney's Office. Plaintiff alleges that
his house was ransacked by Deputy Harrison. He seeks damages and injunctive relief.
Record Doc. No. 1 (Complaint at ¶¶ IV and V).

On April 29, 2010, I conducted a telephone conference in this matter.
Participating were plaintiff pro se; Tim Richardson and Jim Mullaly, counsel for
defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v.
McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Rinker testified that he was then incarcerated in OPP as a pretrial detainee based upon a charge of failure to register as a sex offender.  At the time of the hearing, he said that his trial was scheduled for May 15, 2010.  He said he was arrested on this charge on July 10, 2009, and that he has been incarcerated in OPP since that date.

Plaintiff confirmed that his claims in this case begin with an incident in November 2009, about four months after he was arrested, when defendant Deputy Harrison allegedly ransacked his home.  He stated that he was not present in the house on that day, but he learned about the incident from a letter written to him by Stephen Duffy, his roommate who was residing there at the time.  Rinker confirmed that he has no personal knowledge of what occurred in the alleged ransacking incident, other than what he has read in Duffy's letter.

Plaintiff read the following parts of Duffy's letter into the record:  "He [meaning defendant Harrison] came into my house while I [meaning Duffy] was at work, broke out windows, broke the sink and toilet in little pieces, put a bunch of shit on the kitchen floor, set it on fire.  What wasn't destroyed got wet."  Plaintiff said the letter stated that Duffy "moved out" after the incident.

Rinker identified Harrison as a "former deputy who worked at the jail . . . .  I have another letter [from Duffy] saying that [Harrison] knows me from jail."  Plaintiff said

that, when he was first arrested, he was in the House of Detention ("HOD") for about a month before being moved to the Templeman 5 facility at OPP. He said that Harrison was a deputy at the time of the alleged ransacking incident, but he was told by another officer, Captain Michael Laughlin, that Harrison never returned to work after that day.

Rinker testified that "I don't really know why" Harrison allegedly ransacked his home. He said he has only "suspicions" as to why Harrison committed the alleged act, and that he had previously submitted his suspicions to the court in writing. Record Doc. No. 10. He confirmed the speculation in his written submissions that "this act not only intimidated a primary witness in my criminal case, I believe Officer Harrison was paid to do this damage as an act of intimidation . . . [to do] irreparable damage . . . to necessary evidence which is crucial to my criminal case." He further speculated that Harrison was paid by Rinker's brother, a lawyer in private practice, to do these things.

Rinker testified that he and Duffy were together renting the place where they lived at the time of the alleged incident and that, because Rinker was incarcerated at the time of the incident and Duffy has since moved out, he is unable to retrieve evidence he needs for his criminal case. Plaintiff acknowledged that he is represented by counsel in his criminal case, whom "I tried to fire."

Rinker alleged that he had been put in jail in the past (not on the then pending charge of failing to register as a sex offender) based on a complaint by his brother that

was handled by his brother's private law firm. He said that he was originally arrested on an extortion charge prompted by allegations of sexual abuse that he made against his brother and that he was later charged with possession of juvenile pornography, which "arrived on my computer" three days after he was incarcerated on the extortion charge. He testified that he was held in jail on the charges for more than two years before he pled guilty to both the extortion and possession of child pornography charges in December 2004. He said he was sentenced to five years in prison, with credit for time served, based upon his guilty plea, with three years of probation. He asserted that his brother's private law firm had exercised influence over the St. Tammany Parish District Attorney's Office in connection with these criminal proceedings.

Rinker testified that he successfully completed his probation in connection with his extortion and child pornography convictions, so that the only criminal charges currently pending against him are for failure to register as a sex offender. He alleged that he moved from Covington to New Orleans based upon advice from a state officer that he would have to pay only $500 to register as a convicted sex offender in New Orleans, but when he attempted to register after he moved to New Orleans, he learned that the cost was $1,200, which he did not have. He said he believed he had 21 days to pay the fee, but knew he could not pay and would be arrested for failure to register, all of which are matters relevant to his pending criminal case.

As to the instant civil case, plaintiff confirmed that his claim against Harrison is that the deputy damaged his property in an attempt to intimidate plaintiff and a witness and to destroy evidence in Rinker's criminal case, all at the instance of plaintiff's brother, who wants him kept in jail. Plaintiff said he is no longer in touch with his former roommate Duffy, although he believes that Duffy remains in the area.

As to his claim against Sheriff Gusman, Rinker alleged that the Sheriff employed Harrison and should be responsible for his employees. He acknowledged that the Sheriff had no personal role in the events on which he bases his claims.

Plaintiff also testified that he seeks to pursue a retaliation claim in this case. He said that, after he filed the instant lawsuit, he was moved from the Templeman 5 facility of OPP to the temporary "tents" facility of OPP and then to the HOD facility, which "is the worst jail, it doesn't have air-conditioning, we have 15 men in a 10-man cell," where he was kept for a month before being returned to Templeman 5. He clarified that he has been in jail for a total of ten months on the current charges and that he spent a month in HOD after he filed the suit. According to his written submissions, plaintiff was moved to HOD on March 25, 2010. He testified that he was told by a social worker at the jail that he was "being punished for the lawsuit" by being moved to HOD. He also acknowledged that he was housed in HOD for three weeks after his initial incarceration

before he filed the instant suit, compared to five months spent in Templeman 5 and three months in the tents.

Rinker confirmed the allegation in his written submissions that he was also strip-searched and shackled after he made his allegations against Harrison. He stated that he does not know who Eric Harrison is, but that his former roommate, Duffy, wrote plaintiff a letter stating that Harrison knows who Rinker is.

After the conference, the presiding district judge entered a partial dismissal order as to defendant New Orleans City Attorney's Office, based on plaintiff's request during the conference to dismiss his claims against this defendant voluntarily. Record Doc. No. 19. In addition, I ordered that (1) defense counsel obtain from plaintiff and forward to me copies of the letters from Stephen Duffy to which plaintiff referred during his testimony and ensure that the originals of those letters are returned to plaintiff, and (2) plaintiff provide to me, in writing, the name of the sheriff's deputy whom he alleges conducted the claimed acts of retaliation. Record Doc. No. 18.

Defense counsel provided the court with photocopies of the letters from Duffy. Record Doc. No. 23.

Plaintiff responded to my order by identifying Sergeant Sessions as the person who retaliated against him at the jail. Record Doc. No. 20. During his testimony, Rinker

described Sgt. Sessions as the deputy recently appointed to oversee the "tents" facility at OPP.

Rinker also provided the court with alleged "copies" of the letters from Duffy, which plaintiff copied in his own handwriting and for which he admittedly provided a "fake Steaphen[1] signature just to show he signed." Record Doc. Nos. 20, 20-1 at p. 3. However, the second letter that plaintiff provided in his own handwriting omits several sentences from the original without indicating that any material has been omitted.

The first letter is dated 9/1/09 and states:

> I [Duffy] have been dating that guy Eric for a few weeks now and got him hooked. He has been spending nights here and we have been hanging out. We had 3 fights allready and broke up twice. I think he does not like to be told what to do. "OPPS"[sic] You know I am bossy and tell people what to do. He is an angry person and has a problem with rage. . . .
> . . . . Eric is a cop. He knows you from jail his last name is Harrison. He is the one who told me you wrote a grievence [sic].

Record Doc. No. 20-1 at p. 2.

The second letter is not dated, but plaintiff's hand-copied version is headed "Letter recieved [sic] from Steaven 11/23/09." This letter states:

> Eric really went [off] the deep end. We got back together and a few days later he acused [sic] me of sleeping around on him. When we broke up I was out every night meeting men and drinking. He found out about this guy named Mark. He came to my house while I was at work broke out windows, broke sink and toilet into little pieces, put a bunch of shit on the

---

[1]Plaintiff variously spells Duffy's first name as "Steaven" or "Steaphen." Duffy's actual signature appears to be "Steavan."

kitchen floor and set fire to it. What wasnt [sic] destroyed got wet. I have been staying at Flex till I find somewhere to go. Eric told the police he did not do this but who elese [sic] is going to do it. Well he started a war. I have been stalking him and harrising [sic] him, I will get revenge. I may end up in OPP. Im [sic] not sure whats [sic] going to happen but the landlords want me to pay for damages because they lack insurance. "Good luck with that" I am concidering [sic] moving out of town maybe Laplace. . . .

     . . . .

Enjoy your time in jail cause its [sic] worse here. Eric is crazier than I am "Well we'll see"

Record Doc. No. 20-1 at. p. 1.

## **ANALYSIS**

## I.   <u>STANDARDS OF REVIEW</u>

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." <u>Davis v. Scott</u>, 157 F.3d 1003, 1005 (5th Cir. 1998); <u>Reeves v. Collins</u>, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" <u>Macias v. Raul A. (Unknown), Badge No. 153</u>, 23 F.3d 94, 97 (5th Cir. 1994) (quoting <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989)).

The purpose of a <u>Spears</u> hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. <u>Spears</u>, 766 F.2d at 180. "[T]he <u>Spears</u> procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." <u>Davis</u>, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). <u>Wilson v. Barrientos</u>, 926 F.2d 480, 481 (5th Cir. 1991); <u>Adams v. Hansen</u>, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." <u>Spears</u>, 766 F.2d at 182.

The court may make only limited credibility determinations in a <u>Spears</u> hearing, <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997) (citing <u>Cay v. Estelle</u>, 789 F.2d 318, 326-27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents." <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In two recent opinions, the United States Supreme Court clarified the standard for reviewing a complaint under Rule 12(b)(6). <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007). The Fifth Circuit has explained the Supreme Court's current standard as follows.

> When reviewing a motion to dismiss, we must accept all well-pleaded facts as true and view them in the light most favorable to the

non-moving party. However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" The Supreme Court in Iqbal explained that Twombly promulgated a "two-pronged approach" to determine whether a complaint states a plausible claim for relief. First, we must identify those pleadings that, "because they are no more than conclusions, are not entitled to the assumption of truth." Legal conclusions "must be supported by factual allegations."

Upon identifying the well-pleaded factual allegations, we then "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Rhodes v. Prince, 360 F. App'x 555, 557-58 (5th Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1949, 1950; Twombly, 550 U.S. at 555; Gonzales v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)) (citing Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996)).

The Supreme Court emphasized that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. Iqbal, 129 S. Ct. at 1949. The facial "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quotation omitted).

In this case, plaintiff's complaint must be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a claim under the broadest reading.[2]

## II.    HECK BARS PLAINTIFF'S SECTION 1983 CLAIMS

To whatever extent, if any, Rinker seeks either injunctive relief or damages, his claims must be dismissed at this time. In Heck, the United States Supreme Court held that a civil action for alleged civil rights violations that attacks the validity of state confinement, which has not been reversed, expunged, invalidated, or called into question by a federal court's issuance of a writ of habeas corpus, is not cognizable under Section 1983.

> [T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the

---

[2]Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Id. at 486-87 (emphasis in original) (footnote omitted). Although the Supreme Court's decision in Heck concerned a civil action for monetary damages, the United States Court of Appeals for the Fifth Circuit has also applied Heck in cases in which the plaintiff seeks injunctive relief. Summers v. Eidson, 206 F. App'x 321, 323 (5th Cir. 2006); Kutzner v. Montgomery County, 303 F.3d 339, 340-41 (5th Cir. 2002); Clarke v. Stalder, 154 F.3d 186, 189 (5th Cir. 1998) (citing Edwards v. Balisok, 520 U.S. 641 (1997)).

To the extent that Rinker testified that Harrison allegedly ransacked Rinker's home as part of an effort to intimidate a witness and to destroy evidence that would have been useful in Rinker's criminal case, plaintiff's claims are connected to the validity of his present confinement. See Heck, 512 U.S. at 479 (Convicted prisoner's Section 1983 action for damages barred because it challenged the conduct of state officials who allegedly "'had engaged in an 'unlawful, unreasonable, and arbitrary investigation' leading to petitioner's arrest; 'knowingly destroyed' evidence 'which was exculpatory in nature and could have proved [petitioner's] innocence'; and caused 'an illegal and unlawful voice identification procedure' to be used at petitioner's trial."); Ruiz v. Hofbauer, 325 F. App'x 427, 431 (6th Cir. 2009), cert. denied, 130 S. Ct. 413 (2009) (Section 1983 claims were barred when convicted inmate alleged that defendants violated

his civil rights "to maliciously prosecute plaintiff by tampering with 'Brady exculpatory evidence' and using the prosecutor's office and Michigan State Police to take that evidence and withhold it from palintiff [sic] during the course of the malicious prosecution."); White v. Fox, 294 F. App'x 955, 958 (5th Cir. 2008) ("If we were to find that prison officials altered and destroyed evidence relevant to the [disciplinary] charges against White, that judgment would necessarily imply the invalidity of his subsequent convictions and sentences on those charges."); Penley v. Collin County, 446 F.3d 572, 573 (5th Cir. 2006) ("To the extent that the district court were to award Penley damages on his claim regarding the destruction of evidence and the loss of the opportunity for DNA testing, the validity of his conviction would be implicitly questioned.").

Rinker testified that the charge of failure to register as a sex offender remained pending in the Orleans Parish court system and, at the time of the hearing, had been set for trial on May 15, 2010. His most recent submission to this court, dated July 7, 2010, indicated that he was still in jail. Record Doc. No. 22. Research by staff of the undersigned magistrate judge revealed that Rinker was convicted on June 4, 2010 of failure to register as a sex offender, sentenced to two years in prison and transferred to the custody of the Louisiana Department of Corrections on August 17, 2010. The court has not received any information that the charge has been set aside in any of the ways described in Heck.

Thus, any claims for relief that plaintiff asserts, attacking his continued confinement, are premature and must be dismissed. As the Fifth Circuit has noted, the dismissal of his Section 1983 claims is with prejudice to their being asserted again until the <u>Heck</u> conditions are met. <u>Johnson v. McElveen</u>, 101 F.3d 423, 424 (5th Cir. 1996).

III. <u>DAMAGE TO PROPERTY</u>

Rinker asserts a claim that his property was damaged as a result of the actions of a New Orleans deputy sheriff. Specifically, he alleges that defendant Deputy Harrison damaged windows, the sink and toilet, and other unspecified items of property in his house. Construed broadly, these allegations may constitute a complaint that Rinker was deprived of his property in violation of his due process rights. However, plaintiff fails to state a cognizable Section 1983 claim in this regard, and his claim must be dismissed for several reasons.

First, in deciding whether state action has violated an individual's right to due process, the court must address two questions: "whether the state action has deprived the individual of a protected interest–life, liberty or property," and if so, "whether the state procedures available for challenging the deprivation satisfy the requirements of due process." <u>Augustine v. Doe</u>, 740 F.2d 322, 327 (5th Cir. 1984); <u>accord</u> <u>Neuwirth v. La. State Bd. of Dentistry</u>, 845 F.2d 553, 556 (5th Cir. 1988); <u>Cuellar v. Tex. Employment Comm'n</u>, 825 F.2d 930, 934 (5th Cir. 1987).

The United States Supreme Court has consistently ruled that a state actor's random and unauthorized deprivation of a person's property, whether negligent or intentional, does not result in a violation of due process rights if the State provides an adequate post-deprivation remedy. Alexander v. Ieyoub, 62 F.3d 709, 712 (5th Cir. 1995) (citing Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)); accord Wilson v. Holt, 158 F. App'x 546, 546 (5th Cir. 2005).

More specifically, in Parratt, a state prisoner, like Rinker, sued prison officials under Section 1983 alleging that their negligent loss of a hobby kit he had ordered from a mail order catalog deprived him of property without due process of law. The United States Court of Appeals for the Eighth Circuit affirmed the district court's summary judgment in the prisoner's favor, but the Supreme Court reversed, finding that no due process violation occurs when a state employee negligently deprives a prisoner of property, provided that the State makes available a meaningful post-deprivation remedy. Parratt, 451 U.S. at 543-44, cited in Hudson, 468 U.S. at 532.

In Hudson, a state prisoner filed suit under Section 1983, alleging that the correctional officer defendants had "conducted a 'shakedown' search of [the prisoner's] locker and cell for contraband," and had "intentionally destroyed certain of his noncontraband personal property during the . . . search." Hudson, 468 U.S. at 519-20.

The Court specifically approved the conduct by prison officials of "wholly random searches" or "routine shakedowns of prison cells" as "essential" to the effective security and administration of prisons. Id. at 529. Finding that the State had provided an adequate post-deprivation remedy for the alleged destruction of plaintiff's property, the Court found no violation of his rights actionable under Section 1983. "We hold that the Fourth Amendment has no applicability to a prison cell. We hold also that, even if [the officers] intentionally destroyed [the prisoner's] property during the challenged shakedown search, the destruction did not violate that Fourteenth Amendment since the [State] has provided [the prisoner] an adequate post-deprivation remedy." Id. at 536.

In the instant case, Rinker has not shown that a state employee took action against him. The letters from his former roommate Duffy, on which Rinker relies, do not show Harrison's intent to take any action against any prison inmate, but describe a lover's spat between two persons, not including plaintiff. The ransacking described in the letters on its face has nothing to do with Rinker. Furthermore, plaintiff has no personal knowledge about anything described in the letters. He merely speculates that Harrison ransacked the house that Rinker formerly shared with Duffy as part of an effort to intimidate a witness and destroy evidence in Rinker's criminal case. Plaintiff's pleadings in this regard, "because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1950. Rinker's factual allegations about Harrison's intent are not

"enough to raise a right to relief above the speculative level" and his complaint does not "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 555, 570.

Even if Rinker had alleged action by a state actor against him, the Fifth Circuit has clearly recognized that Louisiana law provides an adequate remedy for both intentional and negligent deprivations of property. Wilson, 158 F. App'x at 546; Hutchinson v. Prudhomme, 79 F. App'x 54, 55 (5th Cir. 2003); Copsey v. Swearingen, 36 F.3d 1336, 1342-43 (5th Cir. 1994); Marshall v. Norwood, 741 F.2d 761, 764 (5th Cir. 1984).

Thus, the deprivation of property alleged by Rinker in this case, whether negligent or intentional, is precisely the kind of prisoner's claim as to which the Fifth Circuit has consistently affirmed dismissals by applying the Parratt/Hudson doctrine. See, e.g., Leggett v. Comer, 280 F. App'x 333, 335 (5th Cir. 2008) (affirming dismissal of prisoner's claim that defendants intentionally deprived him of his craft tools, materials and finished products because the state provided an adequate post-deprivation remedy); Sossamon v. Williams, 270 F. App'x 323, 324-25 (5th Cir. 2008) (prisoner failed to state a constitutional claim because the prison property officer's actions in confiscating and destroying his personal property were random and unauthorized and the state provided an adequate post-deprivation remedy); Hutchinson, 79 F. App'x at 54-55 (affirming dismissal of prisoner's claim "that prison personnel mishandled and embezzled funds

deposited in his inmate account" because Louisiana law provides an adequate post-deprivation remedy); Carmona v. Branstuder, 68 F.3d 470, 1995 WL 581807, at *1 (5th Cir. Sept. 18, 1995) (Prisoner who discovered some of his property missing after a search of his cell by prison personnel failed to state a constitutional claim because Louisiana law provides an adequate post-deprivation remedy.).

Although the alleged destruction of Rinker's property in this case occurred outside the prison context, the law is the same. No cause of action lies under Section 1983 if state law provides an adequate post-deprivation remedy. See Floyd v. City of Kenner, 351 F. App'x 890, 899 (5th Cir. 2009) (Plaintiff's claim that police officer refused to return his seized property after plaintiff was arrested, but never prosecuted, was properly dismissed because Louisiana had adequate post-deprivation procedures for plaintiff to recover his property.); Quickie Chickie, Inc. v. Sexton, 194 F. App'x 259, 261 (5th Cir. 2006) (Plaintiff corporation's Section 1983 challenge to allegedly illegal seizure of its immovable property resulting from Sheriff's execution of writ of sequestration was properly dismissed. Plaintiff failed to show that it did not have adequate post-deprivation remedy under Louisiana law.); Schoppa Family v. Kupersmith, 54 F. App'x 592, 2002 WL 31730375, at *3 (5th Cir. 2002) (State university professor's claim for damages based on defendants' intentional, unauthorized conversion of her private property, which was commingled with state university's property in her laboratory, was not cognizable under Section 1983 because Texas tort law provided an adequate remedy.).

In the instant case, plaintiff's state law remedy for the alleged negligent or intentional deprivation of his property lies in a conversion or other tort suit for damages in state court. Because no constitutional violation has been alleged, his complaint in this court fails to state a claim for which relief may be granted pursuant to Section 1983 and/or is legally frivolous and must be dismissed. Rinker remains free to pursue his claim concerning damaged property in state court against the state official who allegedly caused the damages.

IV.    RETALIATION

Rinker asserts that he was subjected to retaliation for filing the instant lawsuit in January 2010 when he was moved from Templeman 5 to the temporary "tents" facility of OPP and then to HOD on March 25, 2010, where he was kept for about one month. He testified that HOD "is the worst jail, it doesn't have air-conditioning, we have 15 men in a 10-man cell," and that he was told by a social worker at the jail that he was "being punished for the lawsuit" by being moved to HOD. He testified that he was also strip-searched and shackled after he made his allegations against Harrison. He identified Sgt. Sessions as the deputy who allegedly retaliated against him.

Plaintiff's allegations attempt to state a claim of retaliation for exercising his First Amendment right of access to the courts. Prison officials may not retaliate against a prisoner for exercising his First Amendment rights of access to the courts or to complain

through proper channels about a guard's misconduct.  Morris v. Powell, 449 F.3d 682,

684 (5th Cir. 2006); Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995).

The law in the Fifth Circuit concerning prisoner retaliation claims has undergone

substantial evolution in recent years.  It is based on the following general principles:

> The elements of a retaliation claim are the invocation of a specific
> constitutional right, the defendants' intent to retaliate against the plaintiff
> for his or her exercise of that right, a retaliatory adverse act, and causation,
> i.e., but for the retaliatory motive the complained of incident . . . would not
> have occurred.  With respect to the last element, we [have] emphasized that
> an action motivated by retaliation for the exercise of a constitutionally
> protected right is actionable even if the act, when taken for a different
> reason, may have been legitimate.

Clarke v. Stalder, 121 F.3d 222, 231 (5th Cir. 1997), vacated in part and reinstated in

relevant part, 154 F.3d 186 (5th Cir. 1998) (citing Bounds v. Smith, 430 U.S. 817 (1977);

Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997); Woods, 60 F.3d at 1164-66)

(quotations and additional citations omitted).

In Woods, the Fifth Circuit, applying the general First Amendment principles

addressed above, affirmed the district court's denial of defendants' motion for summary

judgment.  Defendants in that case had sought dismissal of a prisoner's claim based on

allegedly false disciplinary charges by defendants in alleged retaliation for plaintiff's

letters of complaint to a federal judge and to the warden of the prison.  The Fifth Circuit

agreed that the inmate's retaliation claim should be permitted to proceed, but in doing so

it expressed the following caution:  "The prospect of endless claims of retaliation on the

part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." Woods, 60 F.3d at 1166 (citation and quotation omitted).  The Fifth Circuit warned that "trial courts must carefully scrutinize these claims."  Id.

> To state a claim of retaliation <u>an inmate must allege the violation of a specific constitutional right</u> and be prepared to establish that but for the retaliatory motive the complained of incident . . . would not have occurred. This places a significant burden on the inmate . . . .  The inmate must produce direct evidence of motivation or, the more probable scenario, "allege a chronology of events from which retaliation may plausibly be inferred."

Id. (citations omitted) (emphasis added).

A year later, the United States Supreme Court reexamined the scope of prisoners' First Amendment right of access to the courts in Lewis v. Casey, 518 U.S. 343 (1996). The Supreme Court made clear in Lewis that an inmate <u>must establish actual injury</u> to state a claim for denial of his right of access to the courts.  Id. at 349-50.

Recently in Morris, a case of first impression in the Fifth Circuit, the court addressed "[w]hether an allegation of de minimis retaliatory acts can support a retaliation claim" under the First Amendment.  Morris, 449 F.3d at 684.  The court stated that

> [t]he question, however, is not whether the violation of [plaintiff's] constitutional rights was <u>de minimis</u>, but whether any violation occurred at all.  To establish a constitutional violation, an inmate must show that he suffered a qualifying adverse retaliatory act.  If the retaliation alleged by [plaintiff] does not pass this bar, he has suffered no constitutional injury.

<u>Id.</u>  The Fifth Circuit held that

> [t]he purpose of allowing inmate retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising constitutional rights.  Some acts, though maybe motivated by retaliatory intent, are so <u>de minimis</u> that they would not deter the ordinary person from further exercise of his rights.  Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim.
>
>  . . . . Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights. . . .
>
>  With this standard in mind, we turn to the specific retaliation alleged by [plaintiff] to determine whether the actions of the [prison] officials would have deterred a person of ordinary firmness from exercising his First Amendment right to file grievances against prison officials.

<u>Id.</u> at 686 (citing <u>Crawford-El v. Britton</u>, 523 U.S. 574, 588 n.10 (1998)).

The Fifth Circuit's reasoning and rulings in <u>Morris</u> accord with the Supreme Court's holding in <u>Lewis</u> that a prisoner who brings a retaliation claim under the First Amendment must allege actual injury in order to assert a claim.  Furthermore, the alleged retaliatory acts must be more than de minimis, which means they must be capable of deterring a person of ordinary firmness from further exercising his constitutional rights.

Thus, the law in the Fifth Circuit

> is well established that prison officials may not retaliate against an inmate who exercises his right of access to court.  Officials likewise may not retaliate against an inmate for using the grievance system.  A plaintiff must allege facts showing that the defendant possessed a retaliatory motive.  The inmate must show <u>more than his personal belief that he was the victim of retaliation.  Mere conclusory allegations of retaliation are not enough.</u>  In order to proceed on his claims, a plaintiff must show that the retaliatory adverse act [was] more than a <u>de minimis</u> act.

23

Decker v. McDonald, No. 5:09cv27, 2010 WL 1424322, at *15 (E.D. Tex. Jan. 11, 2010) (Craven, M.J.) (citing Morris, 449 F.3d at 687; Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999); Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997); Moody v. Baker, 857 F.2d 256, 258 (5th Cir. 1988); Whittington v. Lynaugh, 842 F.2d 818, 820 (5th Cir. 1988); Hilliard v. Board of Pardons & Paroles, 759 F.2d 1190, 1193 (5th Cir. 1985); Ruiz v. Estelle, 679 F.2d 1115, 1153 (5th Cir.), amended in part and vacated in part, 688 F.2d 266 (5th Cir. 1982); Campbell v. Beto, 460 F.2d 765, 768 (5th Cir. 1972)), report & recommendation adopted, 2010 WL 1424292 (E.D. Tex. Apr. 7, 2010) (Folsom, J.) (emphasis added).

In the instant case, Rinker has not alleged the violation of a specific constitutional right because he has no constitutional right to a particular housing assignment or classification within any prison. The classification of inmates is an administrative function of the prison. Jones v. Diamond, 636 F.2d 1364, 1376 (5th Cir. 1981) (en banc).[3] Courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation. Bell v. Wolfish, 441 U.S. 520, 547-48 (1979); Smith v. Bingham, 914 F.2d 740, 742 (5th Cir. 1990). "Inmates have a federal right to due process at prison classification . . . only if state law contains 'substantive predicates' limiting the prison administrators' discretion

---

[3]Overruled on other grounds by International Woodworkers of Am. v. Champion Int'l Corp., 790 F.2d 1174 (5th Cir. 1986), aff'd sub. nom. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437 (1987).

to classify, assign, and punish inmates." Ricker v. Leapley, 25 F.3d 1406, 1409 (8th Cir. 1994); accord Canterino v. Wilson, 869 F.2d 948, 953 (6th Cir. 1989) (citing Hewitt v. Helms, 459 U.S. 460, 472 (1983)). "Classification of inmates in Louisiana is a duty of the . . . [jailer] and an inmate has no right to a particular classification under state law." Woods v. Edwards, 51 F.3d 577, 581-82 (5th Cir. 1995) (citation omitted).

Thus, "[i]nmates have no protectable property or liberty interest in custodial classification. The classification of prisoners is a matter within the discretion of prison officials. Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials." Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998) (citations omitted), abrogated on other grounds by Booth v. Churner, 532 U.S. 732, 735 (2001). The Fifth Circuit "has continued to hold post-Sandin that an inmate has no protectable liberty interest in his classification." Wilkerson v. Stalder, 329 F.3d 431, 435-36 (5th Cir. 2003) (citing Sandin v. Conner, 515 U.S. 472 (1995)).

Accepting as true plaintiff's testimony concerning his transfer to HOD, he has not established an abuse of the discretion that the law assigns to prison officials. A prison inmate "does not have a constitutional right to be housed in a particular facility." Wolters v. Fed. Bureau of Prisons, 352 F. App'x 926, 928 (5th Cir. 2009) (citing Olim v. Wakinekona, 461 U.S. 238, 244-45 (1983); Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995)). No violation of Rinker's federal constitutional rights has occurred under the classification circumstances described in his complaint.

Furthermore, plaintiff's allegation that he was shackled and strip-searched after he made his allegations against Harrison does not state a claim for a constitutional violation. "Prisons are inherently dangerous institutions, and decisions concerning safety, order, and discipline must be, and always have been, left to the sound discretion of prison administrators." Lewis, 518 U.S. at 391. The decision to shackle a prisoner while searching him is plainly within the discretion of prison administrators. Id.; see also Davis v. Allen County Sheriff, No. 1:05-CV-225, 2005 WL 1654033, at *2 (N.D. Ind. July 11, 2005) (citing Whitley v. Albers, 475 U.S. 312, 321-322 (1986)) ("Mr. Davis did not want to be cuffed, he preferred to be cuffed in front, and he wanted to move to a different area of the jail; but he was a prisoner and it was not for him to dictate to the guards when or where he would be restrained."); Pool v. Peters, No. 92 C 345, 1994 WL 148658, at *5 (N.D. Ill. Apr. 21, 1994) (Prisoner who was "forced to wear shackles when outside his cell" failed to state a claim for a constitutional violation. "It is well within the prison administrators['] discretion to require extra security measures for those prisoners who present a greater risk, even though it may place an additional burden on that inmate's liberty or comfort."); Armstrong v. Lane, 771 F. Supp. 943, 949 (C.D. Ill. 1991) (Prison officials "have unfettered discretion to use restraints for purposes of security and control. This court will not question the defendants' decision to cuff the plaintiff when he is outside of his cell."). Thus, accepting as true plaintiff's testimony

that he was shackled after he made his allegations against Harrison, he does not state a claim for a constitutional violation.

As to the alleged strip search, plaintiff's written submissions and testimony, construed broadly, may assert a claim of an unconstitutional body cavity search under the Fourth Amendment. The Fourth Amendment provides the correct standard for evaluating inmate claims of unconstitutional body cavity searches. Moore v. Carwell, 168 F.3d 234, 237 (5th Cir. 1999) (citing Elliott v. Lynn, 38 F.3d 188, 191 n.3 (5th Cir. 1994); United States v. Lilly, 576 F.2d 1240 (5th Cir . 1978)).

"A state offender's Fourth Amendment protections are greatly limited in [the] context of prison situations. 'A prisoner's rights are diminished by the needs and exigencies of the institution in which he is incarcerated. He thus loses those rights that are necessarily sacrificed to legitimate penological needs.'" Tuft v. Chaney, No. H-06-2529, 2010 WL 420003, at *7 (S.D. Tex. Jan. 29, 2010) (Miller, J.) (quoting Moore, 168 F.3d at 236-37).

> It is well-settled that a strip search or visual body cavity . . . search of a prison inmate, which includes the exposure of body cavities for visual inspection, is not per se unreasonable under the Fourth Amendment. Nor must the search be predicated upon probable cause. Rather, the Fourth Amendment requires only that searches or seizures conducted on prisoners must be reasonable under all the facts and circumstances in which they are performed. As articulated in this context by the United States Supreme Court in Bell v. Wolfish, . . . :
>> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need

> for the particular search against the invasion of personal
> rights that the search entails. Courts must consider the scope
> of the particular intrusion, the manner in which it is
> conducted, the justification for initiating it, and the place in
> which it is conducted.
>
> . . . . The Fifth Circuit has interpreted this statement of reasonableness as
> striking a balance in favor of deference to prison authorities' views of
> institutional safety requirements against the admittedly legitimate claims
> of inmates not to be searched in a humiliating and degrading manner.

Graves v. Cain, No. 09-0705-JJB-CN, 2010 WL 2134308, at *4-5 (M.D. La. Apr. 16, 2010) (Noland, M.J.), report & recommendation adopted, 2010 WL 2243274 (M.D. La. May 26, 2010) (Brady, J.) (footnote omitted) (quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979)) (citing Hutchins v. McDaniels, 512 F.3d 193 (5th Cir. 2007); Elliott, 38 F.3d at 193; Watt v. City of Richardson Police Dept., 849 F.2d 195, 196 (5th Cir. 1988); Hay v. Waldron, 834 F.2d 481, 485 (5th Cir. 1987); Thorne v. Jones, 765 F.2d 1276 (5th Cir. 1985); United States v. Lilly, 576 F.2d 1240 (5th Cir . 1978)) (additional quotations omitted). Under the Fifth Circuit's standards, a prison official's burden of proving the reasonableness of a strip search "is a light burden because an administrator's decisions and actions in the prison or jail context are entitled to great deference." Tuft, 2010 WL 420003, at *7 (citing Elliott, 38 F.3d at 191).

In the instant case, Rinker testified and stated in his written submissions that he was strip searched and interrogated while wearing shackles. In similar cases of either random or targeted visual body cavity searches, which serve the legitimate penological needs of preserving order, discipline, security and safety, the courts have held that

prisoners failed to assert any constitutional violation. E.g., Brown v. Blaine, 185 Fed. Appx. 166, 2006 WL 1716772, at *3 (3d Cir. 2006); Thompson v. Souza, 111 F.3d 694, 700 (9th Cir. 1997); Elliott, 38 F.3d at 193; Covino v. Patrissi, 967 F.2d 73, 80 (2d Cir. 1992); Tyson v. Tanner, No. 08-4599, 2009 WL 2883056, at *3-4 (E.D. La. Aug. 25, 2009) (Berrigan, J.); Calhoun v. Botos, No. 08-10051, 2009 WL 612348, at *10 (E.D. Mich. Mar. 6, 2009).

In short, the actions of Sgt. Sessions, as described by plaintiff, do not rise to the level of a constitutional violation, and no cognizable Section 1983 claim arises from these facts.

In addition, Rinker cannot show either a retaliatory motive for the actions of Sgt. Sessions or that, but for a retaliatory motive, the actions would not have occurred. Plaintiff testified that he does not know who Harrison is and that Harrison never returned to work at OPP after Harrison allegedly ransacked Rinker and Duffy's house, which occurred between September 9, 2009 (the date of Duffy's first letter) and November 23, 2009 (the date of Duffy's letter describing the ransacking). Plaintiff filed this lawsuit on January 14, 2010. He was not transferred to HOD until March 25, 2010, where he remained for one month before returning to Templeman 5. He acknowledged that he was housed in HOD for three weeks when he was first incarcerated, which was long before both the alleged ransacking incident and his filing of the instant suit. These facts indicate that HOD was routinely used to house prisoners for three to four weeks when adjudged

necessary by prison officials. There is no allegation that Sgt. Sessions either knew Harrison or knew that plaintiff had filed the instant lawsuit against Harrison. This chain of events does not give rise to any plausible inference of retaliatory motive on the part of Sgt. Sessions and therefore does not "state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (quotation omitted); see Wolters, 352 F. App'x at 928 (citing Jones, 188 F.3d at 325; McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998)) (Inmate's claim that prison officials retaliated against him when they denied his requests to be reassigned to a different unit of the prison and they deliberately permitted him to be housed with gang-affiliated inmates "fails because Wolters has not presented any evidence that any prison official acted with a retaliatory motive and has not alleged a chronology of events from which a retaliatory motive might plausibly be inferred."); Bishop v. Does, 350 F. App'x 941, 944 (5th Cir. 2009) (citing Jones, 188 F.3d at 325) (Inmate's claim that prison official transferred him out of a unit in retaliation for his previous litigation against staff in that unit failed because plaintiff made only conclusory allegations and had no evidence of retaliatory intent.); Leggett, 280 F. App'x at 336 (Retaliation claim was frivolous when inmate failed to show that "his property would not have been missing but for his letter-writing about [prison] officials, and [that a] retaliatory intent motivated the lack of adequate inventories and storage of his property.").

Plaintiff's allegations in this case are unlike those in <u>Richard v. Martin</u>, No. 09-30159, 2010 WL 3007941 (5th Cir. July 27, 2010). In <u>Richard</u>, the inmate had filed a grievance against prison officials. He asserted that defendants retaliated against him for exercising that First Amendment right by placing him, on the same day he submitted the grievance, in solitary confinement for 13 hours in a four-foot-by-eight-foot cell without a mattress or toilet and without his having committed any disciplinary infraction to justify the action. The Fifth Circuit held that these "allegations are sufficient to show causation, a chronology of events from which retaliatory motive can plausibly be inferred, and a more-than-de-minimis retaliatory adverse act." <u>Id.</u> at *2.

Unlike the immediate temporal proximity between the filing of a grievance and the allegedly unjustified punitive actions in <u>Richard</u>, Rinker has alleged only his personal, conclusory belief that he was the victim of retaliation. He has failed to allege any <u>facts</u> showing that any prison official possessed a retaliatory motive with regard to his transfer to HOD for one month and the alleged strip-search and shackling, all of which are routine incidents of prison life.

Finally, Rinker has failed to show any actual injury resulting from the alleged retaliation. He has not been deterred from exercising his First Amendment right to pursue this lawsuit against prison officials, as he has filed at least three written submissions and participated in the <u>Spears</u> hearing since the date of the allegedly

retaliatory acts, nor has he shown that a person of ordinary firmness would be deterred from exercising such First Amendment rights.

For the same reasons that Rinker fails to state a claim for relief under the Rule 12(b)(6) standards, an amendment to his complaint to add Sgt. Sessions as a defendant would be futile. Fed. R. Civ. P. 15(a); Washington v. Weaver, No. 08-30392, 2008 WL 4948612, at *1 (5th Cir. Nov. 20, 2008); Stripling v. Jordan Prod. Co., LLC, 234 F.3d 863, 872-73 (5th Cir. 2000); Wimm v. Jack Eckerd Corp., 3 F.3d 137, 139 (5th Cir. 1993).

Rinker's retaliation claim in this case alleges no violation of a specific constitutional right as a result of any allegedly retaliatory acts. He has not shown the existence of either a retaliatory motive or causation. Accordingly, his retaliation claim is legally frivolous and fails to state a claim upon which relief can be granted under Section 1983. It must be dismissed pursuant to 28 U.S.C. § 1915(e).

## V.  SHERIFF NOT LIABLE

Rinker makes no claim that Sheriff Gusman was personally involved in any of the alleged acts or omissions upon which plaintiff's claims are based. "There is no respondeat superior liability under section 1983." Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996). Thus, this defendant cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in his employ or under his supervision. Sanders v. English,

950 F.2d 1152, 1160 (5th Cir. 1992); <u>Baskin v. Parker</u>, 602 F.2d 1205, 1208 (5th Cir. 1979); <u>Barksdale v. King</u>, 699 F.2d 744, 746 (5th Cir. 1983). To hold this defendant liable, plaintiff must establish either that he "was personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [this defendant] . . . and the alleged constitutional violation." <u>Douthit v. Jones</u>, 641 F.2d 345, 346 (5th Cir. 1981); <u>accord</u> <u>Sanders</u>, 950 F.2d at 1159-60. In the instant action, plaintiff has failed to establish either of these two criteria.

## VI.    <u>IMPROPER DEFENDANTS</u>

Rinker has named the New Orleans Sheriff's Department as a defendant in this matter. The Sheriff's Department is not a legal entity or person capable of being sued. <u>Martin v. Davis</u>, No. 06-1770, 2007 WL 763653, at *2 (E.D. La. Mar. 8, 2007) (Berrigan, C.J.) (citing La. Rev. Stat. § 33:361; <u>Causey v. Parish of Tangipahoa</u>, 167 F. Supp. 2d 898, 909 (E.D. La. 2001); <u>Manley v. State</u>, No. 00-1939, 2001 WL 506175, at *2 (E.D. La. May 11, 2001); <u>Norwood v. City of Hammond</u>, No. 99-879, 1999 WL 777713, at *3 (E.D. La. 1999); <u>Boudreaux v. Bourgeois</u>, No. 98-3809, 1999 WL 804080, at *3 (E.D. La. 1999); <u>Dugas v. City of Breaux Bridge</u>, 757 So. 2d 741, 744 (La. App. 3d Cir. 2000)); <u>accord</u> <u>Ruggiero v. Litchfield</u>, 700 F. Supp. 863, 865 (M.D. La. 1988). The State of Louisiana grants no such legal status to any law enforcement  office or department. <u>Liberty Mut. Ins. Co. v. Grant Parish Sheriff's Dep't</u>, 350 So. 2d 236 (La.

App. 3d Cir. 1977). The New Orleans Sheriff's Department is not a "person" for purposes of Section 1983 liability.

In addition, Rinker has named Orleans Parish Prison as a defendant. However, a prison or jail or its administrative departments are not entities that can be sued under Section 1983 because they are not juridical entities under state law capable of being sued and/or because they are not "persons" for purposes of suit under Section 1983, as the statute and case law define that term. Cage v. Kent County Corr. Facility, 113 F.3d 1234, 1997 WL 225647, at *1 (6th Cir. 1997); United States ex rel. Arzonica v. Scheipe, 474 F.2d 720, 721 (3d Cir. 1973); Johnson v. LCDC Med. Staff, No. 4:09-cv-13, 2009 WL 1256906, at *2 (E.D. Tenn. Apr. 29, 2009); Holifield v. Mobile County Sheriff's Dep't, No. 07-0321-CG-C, 2008 WL 2246961, at *5 (S.D. Ala. May 29, 2008); Cullen v. DuPage County, No. 99C1296, 1999 WL 1212570, *1 (N.D. Ill. Dec. 14, 1999); Whitley v. Westchester County Corr. Facility Admin., No. 97CIV0420(SS), 1997 WL 659100, at *6 (S.D.N.Y. Oct. 22, 1997); Sponsler v. Berks County Prison, No. 95-1136, 1995 WL 92370, at *1 (E.D. Pa. 1995); Powell v. Cook County Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993). Thus, Rinker can assert no claim against the Orleans Parish Prison under Section 1983.

**RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[4]

New Orleans, Louisiana, this ___10th___ day of September, 2010.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[4]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.